UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

| | |
|---|---|
| TERESA EVANS, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> CITY OF ETOWAH, Tennessee, ) <br> EMPIRE SURETY GROUP, INC., d/b/a ) <br> "A 24-HR BONDING CO.," ) <br> CHUCK NELMS, City of Etowah Police ) <br> Officer, in his individual and official capacity, ) <br> BILL CRAWFORD, City of Etowah Police ) <br> Officer, in his individual and official capacity, ) <br> JOHN YESTE, in his individual capacity and ) <br> as agent for Empire Surety Group, Inc., and ) <br> JASON SCHWIND, in his individual capacity ) <br> and as agent for Empire Surety Group, Inc., ) <br> ) <br> Defendants. ) <br> ) | Case No. 1:06-CV-252 <br><br> Chief Judge Curtis L. Collier |

## **M E M O R A N D U M**

Before the Court is a motion to dismiss filed by defendants Empire Surety Group, Inc., d/b/a "A 24 Hr Bonding Co.," John Yeste, and Jason Schwind (collectively, the "Empire Defendants") (Court File No. 10). Plaintiff Teresa Evans ("Plaintiff") untimely responded to the motion on February 25, 2007 (Court File No. 20).[1] The Empire Defendants replied on March 5, 2007 (Court File No. 24).[2] Plaintiff also filed a "motion for discovery and stay of judgment pending discovery"

---

[1] On February 5, 2007, the Empire Defendants filed a notice of Plaintiff's untimely response to the motion to dismiss (Court File No. 12). Four days later Plaintiff filed a motion for an extension of time to respond (Court File No. 13), which was denied (Court File No. 12). However, as stated, Plaintiff filed a response on February 25. Due to this procedural history, the Court gave little weight to Plaintiff's response. However, the Court will accept the waiver of Count Two which was agreed to by Plaintiff in her response (Court File No. 13, p. 6).

[2] The Empire Defendants preserved an objection to the late filing of Plaintiff's response.

(Court File No. 14). In essence, Plaintiff attempts to construe the "gravaman" [*sic*] of the Empire Defendants very apparent motion to dismiss under Fed. R. Civ. P. 12(b)(6) as a motion for summary judgment (*id*. at 1). The Court finds this motion is without merit and will **DENY** the motion (Court File No. 14).

For the following reasons, the Court will **DENY in part** and **GRANT in part** the motion to dismiss (Court File No. 10). The Court will dismiss Counts Two and Three of the complaint and **ORDER** Plaintiff to more clearly state her state law claims (Counts Four through Twelve) against the Empire Defendants.

I. **FACTS AND PROCEDURAL HISTORY**

Plaintiff filed this lawsuit on November 21, 2006 (Court File No. 1). The complaint alleges a deprivation of Plaintiff's constitutional rights under color of law in violation of 42 U.S.C. §§ 1981, 1983, and 1985 (*id*. ¶ 1). The complaint also alleges deprivations/violations of the Plaintiff's rights as protected by the Tennessee Constitution, the Tennessee Code, and Tennessee common law (*id*.).

Plaintiff is a resident of Etowah, Tennessee (Court File No. 1 ¶ 11(a)). She is the mother of Brandon Noble ("Noble") (*id*. ¶ 17).

Defendant City of Etowah ("City"), Tennessee, is a political subdivision of the State of Tennessee organized and existing under State law (*id*. ¶ 12). The Etowah Public Safety Department (the "Department") is a law enforcement agency created and regulated by Tennessee State law (*id*. ¶ 13). Defendants Chuck Nelms ("Nelms") and Bill Crawford ("Crawford") are members of the City police force (*id*. ¶¶ 14-15).

The Empire Defendants include Empire Surety Group, Inc. ("Empire"), a corporation created

and registered in Georgia which provides bail bonds services and contracts to secure the appearance of accused principals in court in Cobb County, Georgia (*id.* ¶ 16). Defendants John Yeste ("Yeste") and Jason Schwind ("Schwind") are Empire employees responsible for apprehending principals who fail to appear pursuant to the bail bond contract (*id.* ¶ 16(c)).

The following facts are drawn from the complaint and will be accepted as true for purposes of this motion, as required by a Fed. R. Civ. P. 12(b)(6) inquiry. In September 2004, Plaintiff's son, Noble, was charged with criminal offenses in the Superior Court for Cobb County, Georgia. Empire entered into a bail bond/surety contract with Noble. Per the conditions of his release and with court permission, Noble moved in with Plaintiff pending his trial. (*Id.* ¶¶ 17-19.) Noble was scheduled to appear in Superior Court (Court File No. 10-2); however, Noble failed to appear in court (Court File No. 1, ¶ 20).

The complaint alleges that defendants Nelms, Crawford, Yeste, and Schwind traveled to Plaintiff's home to apprehend Noble, "burst" into the home without a search warrant, knocked Plaintiff down, threw Plaintiff onto a sofa, refused to show Plaintiff a warrant despite her request, waved their firearms in her face, pushed and kicked Plaintiff, arrested Plaintiff, and did not inform Plaintiff of the charges against her for two hours following the arrest (*id.* ¶¶ 21-35). The complaint also alleges the defendants "set upon" Noble when he came into the room, though the complaint does not state which "individual" defendant actually did what to Noble (*id.* ¶ 30).[3]

---

[3] The complaint also alleges that no defendant obtained permission to "place[] Noble in the NCIC as a wanted person"; no defendant sought assistance from the County Sheriff's Department; and no defendant obtained a certified copy of the original bond (or if they did, at no time was it shown to Plaintiff) (*id.* ¶¶ 36-41). These allegations are irrelevant, because (1) the NCIC system is for outstanding federal warrants; (2) the Empire Defendants obtained assistance from the City of Etowah's police (Court File No. 10, p. 4); and (3) the Empire Defendants attached a copy of the bond and warrant in this matter (Court File No. 10-2, p. 4, 16).

II.  **PLAINTIFF'S COMPLAINT**

Plaintiff's complaint asserts federal jurisdiction under 42 U.S.C. §§ 1981, 1983, and 1985, alleging deprivations of constitutionally protected rights guaranteed by the First, Fourth, Eighth, and Fourteenth Amendments (Court File No. 1 ¶¶ 1, 50-62). The complaint also alleges violations of the Tennessee Constitution, Code and common law (*id*. ¶ 1) and invokes the Court's supplemental jurisdiction pursuant to 28 U.S.C. § 1367 (*id*. ¶ 2). The complaint alleges twelve counts:

> (1) violation of civil rights under color of state law pursuant to 42 U.S.C. § 1983,[4]
> (2) violation of equal rights under color of state law pursuant to 42 U.S.C. § 1981,
> (3) conspiracy to violate civil rights pursuant to 42 U.S.C. § 1985,
> (4) negligence,
> (5) negligence *per se*,
> (6) common law assault and battery,
> (7) common law intentional infliction of emotional distress,
> (8) negligent retention and/or promotion,
> (9) trespass to real property,
> (10) malicious prosecution,
> (11) abuse of process, and
> (12) defamation.

(*Id*. ¶¶ 50-74.) As this list shows, three counts allege violations of federal law and nine counts allege tortious conduct defined by state law. In her response to the Empire Defendants' motion, Plaintiff waived Count Two, agreeing she had not stated a claim to that effect (Court File No. 20, p. 6). Accordingly, the Court will **DISMISS WITH PREJUDICE** Count Two of the complaint.

It should be noted, the complaint alleges Counts Two through Twelve by incorporating the paragraphs above each count and averring that the defendants actions "constitute[] a violation of this

---

[4] Plaintiff's civil rights which were allegedly violated include her: (a) right to equal protection and due process under the Fourteenth Amendment; (b) right to be free from unreasonable searches and seizures under the Fourth Amendment; (c) right to be free of cruel and unusual punishment under the Eighth Amendment; and (d) right to freedom of speech under the First Amendment.

law for which they are individually and jointly liable" (*e.g.*, Court File No. 1, ¶¶ 63-74).

III. **ANALYSIS**

   A. **Standard of Review**

Fed. R. Civ. P. 12(b)(6) states that a complaint may be dismissed if it fails to state a claim for which relief may be granted. In evaluating the complaint, the Court must construe it in the light most favorable to Plaintiff. *Trzebuckowski v. City of Cleveland*, 319 F.3d 853, 855 (6th Cir. 2003); *Saglioccolo v. Eagle Ins. Co.*, 112 F.3d 226, 228 (6th Cir. 1997). A complaint will not be dismissed for failure to state a claim under Fed. R. Civ. P. 12(b)(6) unless it appears beyond doubt Plaintiff can prove no set of facts which would entitle her to relief. *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957); *Allard v. Weitzman*, 991 F.2d 1236, 1240 (6th Cir. 1993). The Court does not weigh the evidence; its purpose is to examine the complaint to determine if Plaintiff has pleaded cognizable claims. *Scheid v. Fanny Farmer Candy Shops, Inc.*, 859 F.2d 434, 436 (6th Cir. 1988). The Court accepts as true all factual allegations and reasonable factual inferences made by Plaintiff which address the essential and material elements to sustain a claim for relief. *Trzrbuckowski*; 391 F.3d at 855; *Lewis v. ACB Bus. Servs., Inc.*, 135 F.3d 389, 406 (6th Cir.1998). However, the Court need not accept legal conclusions or unwarranted factual inferences. *Tritent Int'l Corp. v. Kentucky*, 467 F.3d 547, 554 (6th Cir. 2006); *Scheid*, 859 F.2d at 436 ("[a]lthough this standard for Rule 12(b)(6) is quite liberal, more than bare assertions of legal conclusions is ordinarily required to satisfy federal notice pleading requirements").

   B. **§ 1983 Liability for Bail Bondsmen – State Action**

Here, the Court faces two questions. First, can the Court assert subject matter jurisdiction

over the Empire Defendants under 42 U.S.C. §§ 1983 & 1985(c), i.e. do the Empire Defendants act under color of state law? If the above answer is "yes" the Court must consider (1) whether Plaintiff's complaint sufficiently states a claim upon which relief may be granted, Fed. R. Civ. P. 12(b)(6), and (2) pursuant to the Empire Defendants' motion to dismiss, whether Plaintiff must recast her claims to give the Empire Defendants notice of the claims against them specifically.

### 1. Liability Under § 1983 Attaches to State Actors and not to Private Wrongdoers.

42 U.S.C. § 1983 provides, in pertinent part:

> Every person who, under color of any statute . . . of any State . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . .

42 U.S.C. § 1983. As the United States Supreme Court has held on numerous occasions, the Fourteenth Amendment does not protect individuals from private conduct which violates their rights. *E.g.*, *NCAA v. Tarkanian*, 488 U.S. 179, 191 (1988). Under § 1983, "liability attaches only to those wrongdoers 'who carry a badge of authority of a State and represent it in some capacity, whether they act in accordance with their authority or misuse it.'" *Id.* (citing *Monroe v. Pape*, 365 U.S. 167, 172 (1961)).

For a § 1983 claim, Plaintiff must establish (1) she was deprived of a right under the U.S. Constitution or federal law and (2) the deprivation was caused by a person acting under color of State law. *E.g.*, *Flagg Bros., Inc. v. Brooks*, 436 U.S. 149, 155 (1978); *Street v. Corrections Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). To satisfy the "under color of any statute . . . of any State" (also called "state action") requirement, Plaintiff must demonstrate the Empire Defendants' conduct was "fairly attributable" to a State. *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 937 (1982).

6

*Lugar* lays out a two-part test for determining fair attribution. First, the deprivation must be caused by the exercise of a right or privilege created by a State or by a rule of conduct imposed by a State or by a person for whom a State is responsible. Second, the party depriving the individual of such right or privilege "may fairly be said to be a state actor." *Id*. *Lugar* offers examples of when a person "may fairly be said to be a state actor," such as when the defendant is a state official, "has acted together with or has obtained significant aid from state officials," or the depriving conduct "is otherwise chargeable to the State." *Id*.

### 2. Bail Bondsmen Are State Actors When They Act in Concert with Police.

In the motion to dismiss, the Empire Defendants claim they did not act "under color of law" for purposes of § 1983 (Court File No. 10, p. 3). Courts have divided over whether and when bail bondsmen are/become state actors. At common law, the private contractual relationship between a surety and principal excluded bondsmen from the ambit of state action and permitted them to arrest their principals because they were acting pursuant to their private contractual rights. *See Taylor v. Taintor*, 83 U.S. 366, 371 (1872) (holding a surety may follow a principal across state lines, arrest a principal on the Sabbath, and break-and-enter into the principal's home to arrest him without process); *Fitzpatrick v. Williams*, 46 F.2d 40, 42 (5th Cir. 1931) (the surety's right over the principal was "an original right that arises from the relationship between the principal and his bail, and not one derived through the State").[5] Most modern courts hold that bondsmen act under color of State law when they act in concert with police officers, or in some other way attains state authority. *See*, *e.g.*, *Landry v. A-Able Bonding, Inc.*, 75 F.3d 200, 204 (5th Cir. 1996) ("[t]he majority of federal

---

[5] *See also* Holly J. Joiner, Note, *Private Police: Defending the Power of Professional Bail Bondsmen*, 32 Ind. L. Rev. 1413 (1999); Matthew L. Kauffman, Note, *An Analysis of the Powers of Bail Bondsmen and Possible Routes to Reform*, 15 N.Y.L.Sch. J. Hum. Rts. 287, 322 (1999).

courts that have addressed the state action issue in the context of bail bondsmen have based their decisions on whether the bondsmen enlisted the assistance of law enforcement officials in arresting their principals"); *Jackson v. Pantazes*, 810 F.2d 426, 429-30 (4th Cir. 1987) (finding state action where bondsman obtained aid from a police officer and relationship between bondsmen and State was interdependent); *Weaver v. James Bonding Co., Inc.*, 442 F. Supp. 2d 1219, 1226 (S.D. Ala. 2006) (labeling test of whether bail bondsman utilized police assistance in arresting a principal the "litmus test" for finding state action (collecting cases)); *McCoy v. Johnson*, 176 F.R.D. 676, 681-82 (N.D. Ga. 1997) ("when bondsmen unilaterally apprehend their principals without any assistance from law enforcement officials, courts have consistently found them not to be state actors" (collecting cases)).[6]

The United States Court of Appeals for the Sixth Circuit has not had an opportunity to fully address this issue,[7] but the circuit court has considered if private casino security personnel were state actors when a State law permitted them to arrest patrons on-site without a warrant. *See Romanski v. Detroit Entm't, L.L.C.*, 428 F.3d 629, 636-37 (6th Cir. 2005) (applying a public function analysis, i.e. "a private entity is said to be performing a public function if it is exercising powers traditionally

---

[6] In most of the cases which do not find bondsmen to be state actors, bondsmen are the only defendants and no law enforcement officers are charged. *Cf. Green v. Abony Bail Bond*, 316 F. Supp. 2d 1254, 1260-62 (M.D. Fla. 2004); *Hunt v. Steve Dement Bail Bonds, Inc.*, 914 F. Supp. 1390, 1391 (W.D. La. 1996). *But see Ouzts v. Md. Nat'l Ins. Co.*, 505 F.2d 547, 555 (9th Cir. 1974) (holding bondsmen are not state actors because they are "in the business in order to make money"); *Thomas v. Miller*, 282 F. Supp. 571, 573 (E.D. Tenn. 1968) (no relevant discussion). The United States District Court for the District of Kansas harmonized *Ouzts* with cases finding state action in *Bailey v. Kenney*, 791 F. Supp. 1511, 1523 (D. Kan. 1992).

[7] In an unpublished case, the Sixth Circuit found a *pro se* plaintiff had failed to sufficiently allege fair attribution against a bonding company and two of its employees. The opinion provides little analysis. *Corethers v. Atlas Bonding Co.*, 1993 WL 402893 (6th Cir. Oct. 7, 1993).

reserved to the state"). The appeals court held the security personnel, pursuant to a license conferred by State law, was exercising a power traditionally, exclusively, reserved to the State (the power to arrest), and were therefore state actors for purposes of § 1983 liability. *Id.* at 638. Other courts, to find state action, apply a "nexus or joint action" test, *see e.g.*, *Jackson*, 810 F.2d at 429-30 (finding state action where bondsman and police operated in a "symbiotic relationship").

### 3. The Empire Defendants' Conduct Is Fairly Attributable.

Here, applying *Lugar*, the public function test, and the nexus test, it is obvious the Empire Defendants acted under color of State law. Both Tennessee and Georgia regulate professional bail bondsmen, granting them the authority to arrest their principals without a warrant. Tenn. Code Ann. §§ 40-11-133 & 134; Ga. Code Ann. §§ 17-6-56 & 57. In Tennessee, a bondsman is entitled to the aid of the county sheriff in arresting the principal. Tenn. Code Ann. § 40-11-134. In arresting Noble Yeste and Schwind availed themselves of this entitlement by utilizing the Department. They acted in accord with Georgia law, which requires out-of-state bondsmen to notify local authorities of their presence and purpose. Ga. Code Ann. § 17-6-57. The Empire Defendants were thereby exercising powers and privileges conferred on them by state law. *Lugar*, 457 U.S. at 937; *accord Green v. Abony Bail Bond*, 316 F. Supp. 2d 1254, 1259 (M.D. Fla. 2004) (finding the first prong of *Lugar* to be met because plaintiffs alleged the infringement of rights under the Fourth, Fifth, Sixth, Eighth and Fourteenth Amendments, caused by the exercise of a privilege (a bondsman's license) created by State law).

As to whether the Empire Defendants may "fairly be said to be state actors," the Court finds the Empire Defendants "acted together with or . . . obtained significant aid from state officials," fulfilling the nexus test. *Lugar*, 457 U.S. at 937. The Empire Defendants exercised a traditional state

function – like the security personnel in *Romanski*, the bondsmen exercised the power to arrest. 428 F.3d at 638-39. Further, the Empire Defendants acted pursuant to a bench warrant issued by a State court (Court File No. 10-2, p. 4). In *Maynard v. Kear*, 474 F. Supp. 794 (N.D. Ohio 1979), the court held that bondsmen who acted under authority of a state bench warrant were state actors. The Empire Defendants operated in conjunction with members of the Department (Court File No. 1, ¶¶ 21-34). The police were first through the door into Plaintiff's home (*id*. ¶ 24). Finally, simultaneous with the Empire Defendants arresting Noble, Nelms and Crawford arrested Plaintiff, which was a clear application of state power. Thus the Empire Defendants were active participants in the performance of a public function and operated in a symbiotic relationship with Department law enforcement personnel. Their conduct satisfies the second prong of *Lugar*. 457 U.S. at 937; a*ccord Brady v. Maasikas*, 2006 WL 1288608 (M.D. Tenn. May 9, 2006) (holding bondsmen were state actors when they acted in concert with a co-defendant and deputy sheriff).

### C. Specificity of Plaintiff's Complaint

The Empire Defendants argue, if the Court concludes (as it has) they are state actors, Plaintiff has not stated a clear claim against them under either federal or state law (Court File No. 10, p. 7, 11). As detailed above, Plaintiff's federal claims include a violation of and conspiracy to violate her rights under the First, Fourth, Eighth, and Fourteenth Amendments to the U.S. Constitution. Plaintiff also alleged multiple state and common law torts (Court File No. 1 ¶¶ 66-74).

#### 1. Plaintiff Must Clarify When Her State Law-Based Counts Are Alleged Against the Empire Defendants.

The Empire Defendants complain they cannot ascertain which of Plaintiff's state law claims have been alleged against them (Court File No. 10, p. 11). This may be true. The Court agrees with the Empire Defendants that Plaintiff's complaint, though "short and plain," Fed. R. Civ. P. 8(a), does

not clearly allege which injuries were caused by the multiple defendants. The Court recognizes, under a notice pleading system, the complaint must simply "give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Conley*, 355 U.S. at 47. The Court is not applying a heightened pleading standard here, but the Court finds the Empire defendants do not have sufficient and fair notice of the claims against them when some of those claims (*e.g.*, malicious prosecution or abuse of process) would more traditionally be alleged only against the City and Department. Therefore, the Court will **ORDER** Plaintiff to amend her complaint to clarify the counts against the Empire Defendants as opposed to the counts which are only alleged against the City, Department, Nelms, and/or Crawford. This is consistent with the intent behind Fed. R. Civ. P. 10(b). *See* 2-10 Moore's Federal Practice § 10.03 ("[w]hen a complaint or other pleading seeking relief is presented against multiple defendants, separate counts may be required in order to clearly indicate to which defendant each claim applies"); 5 Wright & Miller Federal Practice & Procedure § 1248 ("in order to state a claim for relief, actions brought against multiple defendants must clearly specify the claims with which each individual defendant is charged"); *Reinholdson v. Minnesota*, 2002 WL 32658480, *2 (D. Minn. Nov. 21, 2002) (citing Wright & Miller, requiring plaintiff to recast the complaint because it failed to articulate which defendant was being sued for which cause of action).

2. **Plaintiff Has Asserted a Federal Claim Against the Empire Defendants Under the Fourth Amendment.**[8]

At the same time the Court will not dismiss the complaint, because Plaintiff properly asserted

---

[8] Because Plaintiff has a viable § 1983 claim against the Empire Defendants, in the interest of judicial efficiency, the Court will exercise supplemental jurisdiction over Plaintiff's state law claims. 28 U.S.C. § 1367(a).

11

the Empire Defendants violated her rights under the Fourth Amendment. The Empire Defendants concede that Plaintiff has such a claim (Court File No. 10, p. 10), but argue it is only against the other defendants (the City *et al.*), because Nelms and Crawford, acting in their official capacities, actually arrested Plaintiff (*id.*).

Construing the facts in the light most favorable to Plaintiff, *Trzebuckowski*, 319 F.3d at 855, Plaintiff has alleged the Empire Defendants were engaged in an unreasonable search and seizure of her person and premises. From the complaint, it appears Empire Defendants requested the assistance of and cooperated with the "official" City/Department defendants in apprehending Noble (Court File No. 1, ¶¶ 21-34). According to the complaint's allegations, Plaintiff (1) was an undetained person, at home at the time of the incident, and (2) excessive force was used in the course of a seizure and then arrest of Plaintiff (*id.*). Therefore, Plaintiff's claim is actionable under the Fourth Amendment and its reasonableness standard. *See Graham v. Connor*, 490 U.S. 386, 395 (1989); *Phelps v. Coy*, 286 F.3d 295, 299 (6th Cir. 2002). The test to apply is whether the officers' (and others) use of force is "objectively reasonable, balancing the cost to the individual against the Government's interests in effecting the seizure." *Graham*, 490 U.S. at 396. Other courts considering similar issues and facts have upheld Fourth Amendment claims against bail bondsmen acting "under color of law." *See*, *e.g.*, *Bailey v. Kenney*, 791 F. Supp. 1511, 1525 (D. Kan. 1992) (citing *Lopez v. McCotter*, 875 F.2d 273, 277 (10th Cir. 1989) (cases "relying on the 'if necessary' qualification in *Taylor* [*v. Taintor*], have decided that the common law right of recapture is limited by the reasonable means necessary to effect rearrest")); *Jackson*, 810 F.2d at 430 (finding sufficient evidence in bondsman's physical contact with the plaintiff, his breaking of doors within her home, and his threats against her, to sustain a cause of action alleging violation of her constitutional rights);

*Tirreno v. Mott*, 453 F. Supp. 2d 562, 568 (D. Conn. 2006) (finding state action on a Fourth Amendment claim where bondsmen entered home to arrest principal and obtained "significant aid" from local police – according to the complaint the police threatened to kill plaintiffs' dog and assisted bondsmen in searching the home); *Mason v. City of New York*, 949 F. Supp. 1068, 1071 (S.D.N.Y. 1996) ("[§] 1983 affords a cause of action for false imprisonment where the defendants [bond company, employees, and Port Authority police] act under color of state law") (citing *Zanghi v. Inc. Vill. of Old Brookville*, 752 F.2d 42, 45 (2d Cir. 1985)).[9]

### 3. **Plaintiff Has Failed to Assert a Claim Under the First or Eighth Amendments.**

Plaintiff also alleged violations of the First, Eighth, and Fourteenth Amendments (Court File No. 1, ¶ 60). Although Count One will not be dismissed because (as stated above) Plaintiff asserted a Fourth Amendment violation and perhaps a substantive due process claim, the complaint fails to adequately allege deprivations of Plaintiff's First or Eighth Amendment rights. First, as the Empire Defendants highlight (Court File No. 10, p. 8), the Eighth Amendment's prohibition against cruel

---

[9] While the Empire Defendants labeled Plaintiff's substantive due process claim "frivolous" (Court File No. 10, p. 8) the Sixth Circuit has held that a plaintiff who alleges physical abuse by state actors during an arrest-type situation and whose substantive rights are not clear under the Fourth or Eighth Amendments may assert a claim under the "more generally applicable due process clause of the Fourteenth Amendment." *Phelps v. Coy*, 286 F.3d 295, 300 (6th Cir. 2002); *Darrah v. City of Oak Park*, 255 F.3d 301, 305-06 (6th Cir. 2001) (citing *United States v. Lanier*, 520 U.S. 259, 272 (1997) (where possible excessive force claims should be analyzed under the Fourth Amendment but "not all constitutional claims relating to physically abusive government conduct must arise under" the Fourth/Eighth Amendments; the test under the Fourteenth Amendment is whether the "official" conduct "shocks the conscience") (citing *County of Sacramento v. Lewis*, 523 U.S. 833, 843-46 (1998)). Therefore, the Court need not address Plaintiff's Fourteenth Amendment claim because the Court has found, under the deferential Rule 12(b)(6) standard, a Fourth Amendment violation. *Graham*, 490 U.S. at 394. However, the Court will not dismiss Plaintiff's substantive due process claim, in case Plaintiff should attempt to surpass the "substantially higher hurdle" presented by such a claim, *id.* at 396-97; *Lewis*, 523 U.S. at 845-46; *Darrah*, 255 F.3d at 306.

and unusual punishment applies to prisoners who have been convicted and is not applicable to Plaintiff, an arrestee. *Graham*, 490 U.S. at 395 n.10; *Weaver v. Shadoan*, 340 F.3d 398, 410 (6th Cir. 2003); *Cornwell v. Dahlberg*, 963 F.2d 912, 915-16 (6th Cir. 1992). Second, Plaintiff's First Amendment claim fails because she has not alleged a violation (or facts to support infringement) of her freedom of speech.

### 4. Plaintiff Has Failed to Assert a Claim Against the Empire Defendants Pursuant to § 1985(c).

Even under a deferential Rule 12(b)(6) analysis, Plaintiff has not sufficiently asserted a 42 U.S.C. § 1985 claim for civil conspiracy against the Empire Defendants. To prevail under § 1985(3) Plaintiff must plead and prove four elements: (1) a conspiracy/agreement between two or more people; (2) the conspiracy's purpose is to deprive Plaintiff of her right to equal protection of the laws; (3) at least one conspirator committed at least one overt act in furtherance of the conspiracy; and (4) the conspirators' conduct (the over act(s)) caused Plaintiff's injuries. *Griffin v. Breckenridge*, 403 U.S. 88, 102-103 (1971); *Haverstick Enters., Inc. v. Fin. Fed. Credit, Inc.*, 32 F.3d 989, 994 (6th Cir. 1994). A proper claim under § 1985(3) alleges conspiracy to violate federal rights for "reasons of racial, or perhaps some other class-based, animus," and causation, i.e. the plaintiff was injured or deprived a right by an act undertaken in furtherance of the conspiracy. *United Broth. of Carpenters & Joiners v. Scott*, 463 U.S. 825, 834-36 (1983).

Plaintiff has arguably alleged she is female, which is a protected class under § 1985. *Volunteer Med. Clinic, Inc. v. Operation Rescue*, 948 F.2d 218, 224 (6th Cir. 1991). Plaintiff alleged "Defendants Schwind and Yeste worked in tandem and conspired with the police officer defendants to violate Plaintiff's rights under § 1981" (Court File No. 1, ¶ 64). This may be an overly

conclusive allegation; however, this could be construed to allege conspiracy under § 1985.[10]
However, § 1985 does not apply to all tortious interferences with the rights of others by alleged conspirators. *Griffin*, 403 U.S. at 101. To make out a § 1985(3) claim, Plaintiff must demonstrate a class-based, "invidiously discriminatory motivation" behind the conspirators' action(s). *Bray v. Alexandria Women's Health Clinic*, 506 U.S. 263, 267-69 (1993); *Bartell v. Lohiser*, 215 F.3d 550, 559-60 (6th Cir. 2000). Plaintiff cannot prevail because she has not pleaded and likely cannot demonstrate the "conspiracy" was motivated by a desire to discriminate against her *because she is female*. If anything, the reason Plaintiff was arrested is because she was harboring a fugitive, and the class to which she belongs is that of fugitive-harborers. This is not a protected category under Fourteenth Amendment/Equal Protection Clause jurisprudence. What Plaintiff has alleged, in terms of fact and law, is insufficient to plead and prove a claim under § 1985(3). Accordingly, Plaintiff's § 1985(3) claim will be **DISMISSED WITH PREJUDICE** as to the Empire Defendants.

IV. **CONCLUSION**

For the reasons above, the Court will **DENY in part** and **GRANT in part** the motion to dismiss (Court File No. 10). The Court will dismiss Counts Two and Three of the complaint and **ORDER** Plaintiff to more clearly allege her state law claims as against the Empire Defendants

---

[10] Civil rights conspiracies are subject to a heightened pleading standard. *See Farhat v. Jopke*, 370 F.3d 580, 599 (6th Cir. 2004) ("[c]laims of conspiracy must be pled with some specificity: vague and conclusory allegations that are unsupported by material facts are not sufficient"); *see also Robertson v. Ala. Dep't of Econ. & Cmty. Affairs*, 902 F. Supp. 1473, 1487 (M.D. Ala.,1995) ("In civil rights and conspiracy actions, courts have recognized that more than mere conclusory notice pleading is required. . . . a defendant must be informed of the nature of the conspiracy which is alleged. It is not enough to simply aver in the complaint that a conspiracy existed.").

(Counts Four through Twelve).  An Order will enter.

                                               **/s/**
                                               **CURTIS L. COLLIER**
                                               **CHIEF UNITED STATES DISTRICT JUDGE**