UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

| | | |
|---|---|---|
| TERESA EVANS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No:1:06-cv-252 |
| v. | ) | |
| | ) | |
| CITY OF ETOWAH; EMPIRE SURETY | ) | Chief U.S. Judge Curtis L. Collier |
| GROUP, INC.; CHUCK NELMS, BILL | ) | |
| CRAWFORD, JASON YESTE, JASON | ) | |
| SCHWIND, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM

Before the Court are the motions of defendants Chuck Nelms ("Nelms"), Bill Crawford

("Crawford"), and the City of Etowah ("City") (collectively "Defendants") for summary judgment

(Court File Nos. 75, 77, 79). Plaintiff Teresa Evans ("Plaintiff") filed a response (Court File No.

91),[1] and Nelms and Crawford filed replies (Court File Nos. 94, 95). For the reasons set out below,

the Court will **GRANT IN PART** and **DENY IN PART** Nelms's and Crawford's motions for

summary judgment (Court File Nos. 75, 77), and will **GRANT** the City's motion for summary

judgment (Court File No. 79).


## I.      FACTS AND PROCEDURAL BACKGROUND

---

[1]In Plaintiff's brief in support of her response to the summary judgment motion, she contends summary judgment is generally an unconstitutional violation of the Seventh Amendment (Court File No. 93, p. 7). The Court rejects such contention. *Calvi v. Knox County*, 470 F.3d 422, 427 (1st Cir. 2006) (holding that Fed. R. Civ. P. 56 does not violate the Seventh Amendment).

Plaintiff's son, Brandon Noble ("Noble") was arrested in Cobb County, Georgia, for trafficking in methamphetamine on or about August 13, 2004 (Court File No. 75 Ex. 2; Pl.'s Dep. 150). Plaintiff and her mother, under the direction of Noble's attorney, secured a bond for Noble's release pending trial (Pl.'s Dep. 40). The bond was secured by Plaintiff's and her mother's houses (*id.*).[2] This bond was issued by the Empire Surety Group, Inc. ("Empire"). One of the conditions of Noble's release required Noble to live with Plaintiff in Etowah, Tennessee (*id.* at 41). Empire required Noble to call them every night from Plaintiff's residence (*id.* at 45).

Noble failed to appear for a court proceeding on October 31, 2005 (Court File No. 75 Ex.2). A Superior Court judge issued a bench warrant for Noble's arrest (*id.*). Plaintiff does not argue the warrant was invalid, but rather she states her son was in the psychiatric unit at Pine Ridge (Pl's Dep. 52). Her son's attorney told Plaintiff that if she faxed him paperwork showing her son was at the psychiatric unit, then the judge would withdraw the bench warrant (*id.* at 53). Plaintiff also states the lawyer and Empire had indicated as long as her son did a "walk-in" with his attorney before the second week in December, it would be "fine." (*id.* at 58-60). Plaintiff also states Noble actually met with Empire's bond agents after October 31 and they agreed he could surrender in December so he could be at home for Thanksgiving (*id.* at 61).

On November 10, 2005, the bond agents visited Plaintiff's home during a garage sale and talked with a neighbor (Pl.'s Dep. at 47-48). According to Plaintiff, the agents "prowled through

---

[2]Plaintiff's deposition is attached as two separate exhibits to Plaintiffs response in opposition to summary judgment (Court File No. 93 Ex. 1, 2). Since the deposition pages are continuously paginated the Court will refer to the page numbers of the deposition without distinguishing in which exhibit the material appears.

[her] personal belongings," bought baseball cards and represented that they were interested in purchasing a piano (*id.*).

In November 2005, agents for Empire contacted defendant Nelms about Noble (Court File No. 93 Ex. 5, at 65). The bail bondsmen produced a business card and credentials identifying them as bonding agents (*id.*). The bail bondsmen also produced a copy of a bench warrant for the arrest of Noble (*id.* at 66), and requested the help of the Etowah Police Department in arresting Noble.

On November 22, 2005, one of the bonding agents informed Nelms that Noble was located at Plaintiff's residence (*id.* at 82). Officer Nelms was informed by one of the bonding agents that the agent had just spoken to Noble over the phone, and the caller identification on the bonding agent's cell phone matched the phone number at Plaintiff's residence (*id.* at 82), which was the residence of both Noble and Plaintiff (Pl's Dep. 13, 42).

Plaintiff was sitting on her couch and watching television when she heard a noise from the front door (*id.* at 67-68). Noble was in Plaintiff's bedroom talking with his grandmother (*id.*). After the noise Noble walked out of the bedroom and said "what hit the house?" (*Id.* at 68). Plaintiff told him to go back to the bedroom and he did so (*id.*). Plaintiff then went into Noble's room and could see people on the front porch, but could not tell who they were (*id.* at 71). Plaintiff then went to a closet in Noble's room and retrieved a .22 caliber rifle (*id.*). Plaintiff loaded the rifle, but when the officers identified themselves she laid the weapon on the bed and moved to open the front door (*id.* at 73). As she walked to the front door, Plaintiff yelled to the people at the front door to wait for her to open it (*id.* at 72-73).

Just as Plaintiff unlocked the door and began to open it, one of the people outside the door kicked it in (*id.* at 74). The door burst open and knocked Plaintiff backwards to the floor (*id.* at 80).

One of the intruders then seized her, picked her up, and threw her on the couch (*id*.). The officers and bail bondsmen stood over Plaintiff shining their flashlights in her eyes, and one repeatedly yelled, "where is he?" (*id*. at 87). Eventually, the police and bail bondsmen specified whom they were seeking, and Plaintiff called for Noble (*id*. at 88). When Noble entered the hall adjoining to the living room the four individuals turned and arrested him (*id*. at 89). The officers forced him back into a bedroom, made him lie on the bed, and handcuffed him (*id*.). While Noble was handcuffed, Nelms hit him in the back with a billy club (*id*. at 90). The rifle Plaintiff retrieved stood at the foot of the bed (*id*. at 100).

Plaintiff told Noble "don't you get up. If they want you to stand up, let them stand you up." (*Id*. at 96). Plaintiff says she was worried the police would claim Noble was resisting arrest if he tried to get up on his own, and the police would then continue to beat him without provocation (*id*.). Crawford replied by telling Plaintiff to "shut her d___ mouth" (*id*.). Crawford then pushed Plaintiff into the living room and kicked her in the leg so she fell to the floor (*id*. at 104-05). Crawford pulled Plaintiff upright by the neck of her shirt and handcuffed her (*id*. at 112). Plaintiff asked if she was being arrested and Crawford said no (*id*. at 113).

Crawford took Plaintiff to a squad car (*id*. at 116). Plaintiff asked for her inhaler becuase she was having difficulty breathing, and Crawford said she "didn't need a damn thing." (*Id*.). Crawford then returned to the house, but soon walked back out, drove off with Plaintiff, and told her someone at the station wanted to talk with her (*id*. at 117). Crawford drove Plaintiff to the McMinn County Jail (*id*. at 118). Plaintiff had been constantly asking to see a warrant, but Crawford and the other officers never provided one (*id*.). And as he drove to the county jail Crawford said "you know how you been wanting to see a warrant? You're fixing to see one, but it's going to be on your d___

a__." (*id*. at 118-19). Once she arrived at the jail, an officer booked her and she had no further contact with Nelms or Crawford (*id*. at 120). Plaintiff was charged with being an accessory after the fact (Court File No. 93 Ex 3 at 6). The grand jury however did not find probable cause to believe an offense had been committed and returned a no true bill (*id*.).

Plaintiff filed a complaint in this action on November 21, 2006 (Court File No. 1). Empire and the bail bondsmen filed a motion to dismiss (Court File No. 10). Empire and the bail bondsmen argued any claim against them should be dismissed because there is no subject matter jurisdiction for Plaintiff's claims against them. The complaint relies upon federal question jurisdiction, which was established by Plaintiff's claims under 42 U.S.C. § 1983. Empire and the bail bondsmen argued these claims were not applicable to them because they were not acting under color of law (Court File No. 10 at 7). The Court denied in part Empire's motion to dismiss, but granted Empire's motion for a more definite statement of Plaintiff's state law claims (Court File No. 30). The Court dismissed Plaintiff's claims against Empire and the bail bondsmen under the First Amendment, Eighth Amendment, and 42 U.S.C. § 1985(c) (Court File No. 30; 29 at 13-16). Plaintiff, in response, filed an amended complaint (Court File No. 36).

Plaintiff's counsel moved to withdraw in late December 2007 (Court File No. 70). On January 17, 2008, before Plaintiff had secured replacement counsel, Defendants filed motions for summary judgment (Court File Nos. 75, 77, 79). Plaintiff obtained replacement counsel on February 11, 2008 (Court File No. 80). The deadline to respond to Defendants' dispositive motions passed on February 7. *See* E.D. TN. L.R. 7.1(a). Because Plaintiff never had an opportunity to respond to Defendants' motions for summary judgment the Court granted a further extension to respond on February 19, 2008 (Court File No. 84). Plaintiff then filed a response to Defendants' motions for

summary judgment on March 10, 2008 (Court File Nos. 91, 93) to which Nelms and Crawford responded on March 14, 2008 (Court File No. 93).

## II.    STANDARD OF REVIEW

Summary judgment is proper when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  The moving party must demonstrate no genuine issue of material fact exists.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Leary v. Daeschner*, 349 F.3d 888, 897 (6th Cir. 2003).  That is, the moving party must provide the grounds upon which it seeks summary judgment, but does not need to provide affidavits or other materials to negate the non-moving party's claims.  *Celotex*, 477 U.S. at 323.  The Court views the evidence, including all reasonable inferences, in the light most favorable to the non-movant.  *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Nat'l Satellite Sports, Inc. v. Eliadis Inc.*, 253 F.3d 900, 907 (6th Cir. 2001).  However, the non-movant is not entitled to a trial based solely on its allegations, and must submit significant probative evidence to support its claims.  *Celotex*, 477 U.S. at 324; *McLean v. Ontario, Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000).  The moving party is entitled to summary judgment if the non-movant fails to make a sufficient showing on an essential element for which it bears the burden of proof. *Celotex*, 477 U.S. at 323.  In short, if the Court concludes a fair-minded jury could not return a verdict in favor of the non-movant based on the record, the Court may enter summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986); *Lansing Dairy, Inc. v. Espy*, 39 F.3d 1339, 1347 (6th Cir. 1994).

## III.    DISCUSSION

As a threshold matter, the Court notes Plaintiff has only offered support for some of her claims.  Plaintiff argues her claim against the City of Etowah for maintaining an unconstitutional policy or custom should survive summary judgment (Court File No. 93 at 3-4).  Plaintiff also argues she has properly shown a genuine issue of material fact which supports her claims against Crawford and Nelms for excessive force, malicious prosecution, false arrest, and a conspiracy to deprive Plaintiff of her civil rights (*id*. at 4-6).  Finally, Plaintiff claims to have appropriately supported her claims for false arrest, assault, aggravated assault, intentional infliction of emotional distress, negligent infliction of emotional distress, and negligence per se (*id*.).

Plaintiff appears to have abandoned or failed to support her claims under the Eighth Amendment (Complaint ¶ 1),[3] for violation of the Equal Protection Clause of the Fourteenth Amendment (Complaint ¶ 4), for violation of her freedom of speech under the First Amendment (Complaint ¶ 59(e)), for violation of her rights under the Due Process Clause of the Fourteenth Amendment (Complaint ¶ 4), her state law claim for defamation (Complaint ¶ 71), her state law claim for trespass to real property (Complaint ¶ 68), and for violation of Article 1 §§ 13 and 32 of the Tennessee Constitution (Complaint ¶ 59(f)).  Under Rule 56 once a party has properly supported a motion for summary judgment, an opposing party, here Plaintiff, "may not rely merely on allegations or denials in its own pleading; rather, its response must--by affidavits or as otherwise provided in this rule--set out specific facts showing a genuine issue for trial."  Fed. R. Civ. P. 56(e)(2).  Because Plaintiff does not appropriately support her response to Defendants' motions for

---

[3]The Court's previous order which dismissed claims under the First Amendment, Eighth Amendment, and 42 U.S.C. § 1985(c) only did so as to Empire and the bail bondsmen (*See* Court File No. 29).

summary judgment on these claims, Defendants' motion for summary judgment on these claims will be **GRANTED**.

Defendants Schwind, Yeste, and Empire have not filed any motions and so all present claims remain pending against them.

A.    **Plaintiff's Allegation City of Etowah Maintains an Unconstitutionally Defective Training Program**

Defendants argue Plaintiff has failed to appropriately support her claim against the City because she fails to show any evidence of an unconstitutional policy or custom (Court File No. 79). Plaintiff argues evidence of an unconstitutional policy or procedure may be found at various places between page 40 and page 104 of the Nelms Deposition (Court File No. 93 at 4). There is too much material to summarize here, but suffice it to say the deposition passages contain Nelms's narrative of the events on November 22, 2005. The deposition testimony also refers to Nelms's training in serving out-of-state warrants and extradition processes.

A plaintiff may not maintain an action against a city merely on the theory of respondeat superior, but rather must show an official policy or custom of the city violated his rights. *Monell v. New York City Dep't of Social Services*, 436 U.S. 658, 692-94 (1978); *Gregory v. City of Louisville*, 444 F.3d 725, 752 (6th Cir. 2006). "[T]he inadequacy of police training may serve as the basis for § 1983 liability only where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact." *City of Canton v. Harris*, 489 U.S. 378, 388 (1989). A suit against an official in his official capacity is no different than a suit against the state itself. *Printz v. United States*, 521 U.S. 898, 931 (1997). So in order to maintain a suit against an official in his official capacity the plaintiff must allege that the municipal entity's policy or custom played a part in the violation.

However, "[p]roof of a single incident of unconstitutional activity is not sufficient to impose liability under *Monell*, unless proof of the incident includes proof that it was caused by an existing, unconstitutional municipal policy, which policy can be attributed to a municipal policymaker." *City of Oklahoma v. Tuttle*, 471 U.S. 808, 823-24 (1985) (plurality opinion). "[E]ven a single act or decision may qualify as an official government policy, though it be unprecedented and unrepeated. But in any case acts will only be construed as official policy when they are those of a body or an official responsible for establishing final government policy respecting such activity." *Holloway v. Brush*, 220 F.3d 767, 773 (6th Cir. 2000).

Plaintiff argues the Nelms's deposition shows that he was inadequately trained and this proves her claim the City engaged in unconstitutional failure to train (Court File No. 93 at 4). The only possible defect in training this deposition transcript might support is the failure to train a police officer in the execution of foreign warrants (Court File No. 93 Ex. 6 at 71-73). In this portion of his testimony Nelms indicated he received no training in the execution of out-of-state warrants, and only on the job training on extradition processes. "That a particular officer may be unsatisfactorily trained will not alone suffice to fasten liability on the city, for the officer's shortcomings may have resulted from factors other than a faulty training program." *City of Canton v. Harris*, 489 U.S. 378, 390-91 (1989). Even if the Court were to grant the execution of the arrest warrant was defective because the officer failed to comply with Tennessee's version of the Uniform Criminal Extradition Act, Tenn. Code Ann. §§ 40-9-101 to 40-9-130, Plaintiff still fails to support her claim. At best, this shows the training of one officer was defective, and the Supreme Court in the *Harris* case held as a matter of law this is insufficient to maintain a claim.

Because Plaintiff fails to point to any evidence of an unconstitutional policy or custom other than a single event, which is the subject of the present action, the City's motion for summary judgment on Plaintiff's claims against it and Officers Nelms and Crawford in their official capacity will be **GRANTED**.

### B.    False Arrest

Plaintiff claims Nelms and Crawford unreasonably arrested her without probable cause. The Fourth Amendment to the United States Constitution prohibits unreasonable arrests. Generally, all custodial arrests must be supported by probable cause. *Dunaway v. New York*, 442 U.S. 200, 208 (1979). Probable cause to arrest means "facts and circumstances within the officer's knowledge that are sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense." *Criss v. City of Kent*, 867 F.2d 259, 262 (6th Cir. 1988). Probable cause requires only the probability of criminal activity. *Illinois v. Gates*, 462 U.S. 213, 235 (1983).

"Probable cause is defined as reasonable grounds for belief supported by less than prima facie proof, but more than mere suspicion . . . the establishment of probable cause requires only a probability or substantial chance of criminal activity, not an actual showing of such activity." *United States v. Ferguson*, 8 F.3d 385, 392 (6th Cir. 1993) (citations omitted).

Plaintiff's account of the events preceding her arrest significantly differs from the account of Nelms and Crawford. Nelms and Crawford allege Plaintiff initially denied Noble was present in the home (Court File No. 75 Ex. 4 at 99). In Plaintiff's version of events, she never denied Noble was home. Plaintiff states, when the officers finally explained who they were looking for, she called out, which made Noble immediately leave the bedroom and walk into the living room (Pl.'s Dep.

at 89). Certainly, if the officer's account of events is correct the police had probable cause to believe Plaintiff intended to "hinder the arrest . . . of the offender" in the terms of the statute. Tenn. Code Ann. § 39-11-411. In Plaintiff's account of events, she commits no act whatsoever which evinces an intent to hinder the officers, and therefore no probable cause exists. For the purpose of a motion for summary judgment, the Court draws all inferences, including credibility determinations in favor of the non-movant. If Plaintiff's account of the events is credited, there was no basis for the police to believe Plaintiff acted to hinder the prosecution of Noble, and therefore there was no probable cause to arrest Plaintiff.

Crawford makes the additional argument that Plaintiff cannot show Crawford arrested her because Crawford's affidavit shows Nelms was the arresting officer (Court File No. 78 at 8-9). However, the testimony of Plaintiff at her deposition was that Crawford placed her in handcuffs and transported her to the jail. If a jury credits this account of events, a reasonable jury could conclude Crawford arrested Plaintiff. Crawford's defense is he was just following an order, a claim which has "not occupied a respected position in our jurisprudence, and officers in such cases may be held liable under § 1983 if there is a reason why any of them should question the validity of that order." *O'Rourke v. Hayes*, 378 F.3d 1201, 1210 n.5 (11th Cir. 2004). If Plaintiff's testimony is credited, no probable cause existed to believe Plaintiff had committed a crime, and a reasonable police officer would have known that. Because of this Defendants Nelms and Crawford's motions for summary judgment on this issue will be **DENIED**.

### C. Excessive Force

Claims of excessive force are analyzed under a reasonableness standard based on "the perspective of a reasonable officer on the scene." *Graham v. Connor*, 490 U.S. 386, 395-96 (1989).

Plaintiff must show the "officers' actions are 'objectively unreasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Id.*; *Griffith v. Coburn*, 473 F.3d 650, 656 (6th Cir. 2007). This requires balancing Plaintiff's Fourth Amendment interests against the government's interests. *Graham*, 490 U.S. at 396; *Burchett v. Kiefer*, 310 F.3d 937, 944 (6th Cir. 2002). In evaluating those interests, courts look at factors such as "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Graham*, 490 U.S. at 396; *Shreve v. Jessamine County Fiscal Ct.*, 453 F.3d 681, 687 (6th Cir. 2006); *Burchett*, 310 F.3d at 944. This is effectively an examination of the totality of the circumstances. *Tennessee v. Garner*, 471 U.S. 1, 8-9 (1985); *Griffith*, 473 F.3d at 656. But where a defendant voluntarily surrenders to law enforcement personnel any use of force is excessive and this excessive force is not covered by qualified immunity. *Tapp v. Banks*, 1 F. App'x 344, 351 (6th Cir. 2001)

Plaintiff had no complaint about how Crawford put her in handcuffs (Pl's Dep. at 113). Her claim for excessive force essentially revolves around two incidents.

First, Plaintiff claims the officers used excessive force when they entered her home. Plaintiff testified she went to the door intending to open it and allow the officers inside (Court File No. 75 Ex. 4 at 18, Pl.'s Dep. II at 38). Plaintiff said she yelled for the officers to wait and give her a chance to open the door (Pl.'s Dep at 73). Plaintiff claims she was in the process of opening the door to comply with the officer's demands when one of the officers kicked the door open, which knocked her to the ground. This officer or bail bondsman then picked her up, threw her down on the sofa, and stood over her and demanded to know where "he" is. Plaintiff cannot testify as to

which Defendant kicked the door open knocking her to the ground, nor can she testify which Defendant threw her on the couch (*id*. at 79-80).

Second, Plaintiff claims Crawford used excessive force when kicking her in the back of her leg. According to Plaintiff's version of events, Crawford had just told her to shut up, and had then shoved Plaintiff towards the living room. And as Plaintiff walked away she felt Crawford kick her leg knocking her to the floor. In Plaintiff's version of events, this use of force is totally unjustified. There was no request from Crawford she do or not do anything; nor was there any indication she would not comply with any request to do or not to do a particular action. Force used by a police officer must be reasonable, and if Plaintiff is believed this force was unrelated to any legitimate law enforcement goal.

Crawford argues this alleged kick is not established by the evidence because Plaintiff did not see the kick occur (Court File No. 78 at 8). However, Plaintiff testified at her deposition Crawford shoved her from the doorway and followed her as she walked into the living room (Pl.'s Dep. at 105). At this point Plaintiff testified she felt a kick to the back of her leg which knocked her down. Supposing a reasonable juror credited Plaintiff's testimony, a reasonable juror could conclude Crawford intentionally kicked Plaintiff. Crawford's argument demands Plaintiff present direct rather than circumstantial evidence. But the law makes no such distinction, and a plaintiff may prove her case with circumstantial evidence. *See Holland v. United States*, 348 U.S. 121, 139-40 (1954) (circumstantial evidence is no different intrinsically than direct evidence).

Nelms argues the Court should grant summary judgment as to any excessive force claims Plaintiff may have against him because Plaintiff has no evidence Nelms personally touched her. Plaintiff in her response merely argues "[t]here is a factual dispute as to [the defendants]

participation and their actions toward Plaintiff, and that factual dispute should require that the determination of the [42 U.S.C. § 1983] claims be determined by a jury acting as a finder of fact." (Court File No. 93 at 5). The only incident of excessive force Plaintiff could argue Nelms participated in directly would be kicking the door open and throwing her onto her couch. However, Plaintiff cannot testify which of the Defendants did either action (Pl's Dep. at 79-80). Because Plaintiff fails to point to any evidence which establishes Nelms used any force, let alone excessive force, the Court will **GRANT** Nelms's motion for summary judgment on this ground. The Court will **DENY** Crawford's motion for summary judgment on this issue.

### D. Malicious Prosecution

Plaintiff alleges a malicious prosecution claim under 42 U.S.C. § 1983, and points to appropriate precedent which supports such a claim (Court File No. 93 at 5). A plaintiff may maintain a claim for malicious prosecution under the Fourth Amendment of the United States Constitution. *Thacker v. City of Columbus*, 328 F.3d 244, 258 (6th Cir. 2003); *Spurlock v. Satterfield*, 167 F.3d 995, 1006 (6th Cir. 1997). Plaintiff, apparently, also seeks to proceed with a claim under the Tennessee common law for malicious prosecution (Court File No. 93 at 6).

Plaintiff's complaint lists her malicious prosecution claim after Plaintiff had clearly started to allege her state law claims. Her complaint also alleges violations of 42 U.S.C. § 1983 unambiguously through citation when she seeks to rely on it. No citation appears on the count for malicious prosecution nor does this count reference any federal law or constitutional provision. Therefore, since the complaint, reasonably read, indicates the basis of Plaintiff's claim for malicious prosecution is state law rather than 42 U.S.C. § 1983 Plaintiff has only pled a state law cause of action. *See Abercrombie & Fitch Stores, Inc. v. American Eagle Outfitters, Inc.*, 280 F.3d 619, 632

(6th Cir. 2002) (complaint should be read in its most reasonable form).

###### E. Conspiracy to Deprive Plaintiff of her Constitutionally Protected Rights

Plaintiff also alleges Defendants formed a conspiracy to deprive her of her civil rights, and Defendants are liable for this conspiracy under 42 U.S.C. § 1985. The City contends Plaintiff has failed to allege let alone prove the requisite discriminatory intent (Court File No. 79 at 7). Plaintiff fails to respond to this argument in her response in opposition to summary judgment. Congress enacted this statutory provision as a part of the Anti-Ku Klux Klan Act of 1871 during Reconstruction. *Browder v. Tipton*, 630 F.2d 1149, 1149 (6th Cir. 1980). The Supreme Court has held the act requires the "invidiously discriminatory motivation [which was] stressed by the sponsors." *See Griffin v. Breckenridge*, 403 U.S. 88, 102 (1971).

Plaintiff merely alleges the officers conspired and agreed to violate her civil rights. This however is insufficient to make out liability under this act. Plaintiff points to no evidence showing any discriminatory remark or behavior of any of the individuals or the City, and Plaintiff fails to even indicate of what protected class she is a member. *Browder*, 630 F.2d at 1150 (the class of individuals protected by the equal protection of the laws language of the statute are those so-called discrete and insular minorities that receive special protection under the Equal Protection Clause). Plaintiff fails to point to evidence sufficient to show a genuine issue of material fact, and Defendants' motions for summary judgment on this claim will be **GRANTED**.

###### F. Qualified Immunity

The Court will examine whether Nelms and Crawford are protected by qualified immunity because the Court has just determined Plaintiff properly alleged the deprivation of her constitutional rights by those defendants. *County of Sacramento v. Lewis*, 523 U.S. 833, 842 n.5 (1998); *Fox v.*

*DeSoto*, 489 F.3d 227, 235 (6th Cir. 2007). Plaintiff has the burden of showing Defendants are not entitled to qualified immunity. *Smoak v. Hall*, 460 F.3d 768, 778 (6th Cir. 2006) (citing *Silberstein v. City of Dayton*, 440 F.3d 306, 311 (6th Cir. 2006) ("Once the qualified immunity defense is raised, the burden is on the plaintiff to demonstrate that the officials are not entitled to qualified immunity.")). Despite bearing the burden, Plaintiff's briefs do not address qualified immunity.

Qualified immunity is "an entitlement not to stand trial or face the other burdens of litigation." *Saucier*, 533 U.S. at 200 (citing *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985)). It balances the ability for plaintiffs to seek redress for government officials' violations of constitutional guarantees against "the risk that fear of personal monetary liability and harassing litigation will unduly inhibit officials in the discharge of their duties." *Anderson v. Creighton*, 483 U.S. 635, 638 (1987). Qualified immunity protects government officials from liability if they are performing discretionary functions as long as their "conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). The right must be "clearly established in a particularized sense" such that it is "clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Fox*, 489 F.3d at 235; *accord Saucier*, 533 U.S. at 202.

Defendants are not entitled to qualified immunity on the excessive force theory because the right to be free from excessive force during arrest is clearly established constitutional law. *Gardenhire*, 205 F.3d at 315; *Bass v. Robinson*, 167 F.3d 1041, 1051 (6th Cir. 1999). Qualified immunity also protects officers who mistakenly believe the amount of force used is reasonable. *Saucier*, 533 U.S. at 206. However, in Plaintiff's version of events, the kick by Crawford is totally

gratuitous and unjustified by any resistence on her part.  If Plaintiff is believed, then no reasonable police officer would have believed himself authorized to use force under those circumstances.

Qualified immunity also protects an officer who "reasonably but mistakenly concludes that probable cause is present."  *Anderson*, 483 U.S. at 641 (1987); *accord Saucier*, 553 U.S. at 206. However, if Plaintiff is believed, the officers had no reason to believe she was attempting help her son evade arrest.  Under Plaintiff's version of events there is no reason for Defendants to believe she intended to delay or evade prosecution.  Absent more, the fact her son was wanted on a bench warrant and was found in his mother's house does not by itself constitute probable cause to arrest his mother as an accessory after the fact.  Particularly, where the son was required as a condition of his release to live there (Pl.'s Dep. at 41-42).

For the foregoing reasons, the Court will **DENY** Nelms's and Crawford's motion for summary judgment on the grounds of qualified immunity.

G.      **Plaintiff's State Law Tort Claims**

1.      **Negligence and Negligence Per Se**

The City contends it is entitled to summary judgment on Plaintiff's negligence claim (Court File No. 79 at 12-13) under the Tennessee Governmental Tort Liability Act ("GTLA").  This act protects governmental entities from suits unless the GTLA waives immunity or the governmental entity has consented to suit.  *Doyle v. Frost*, 49 S.W.3d 853, 857 (Tenn.2001); *Hawks v. City of Westmoreland*, 960 S.W.2d 10, 14 (Tenn.1997); *see generally* Tenn.Code Ann. §§ 29-20-101 to -407.  Municipalities in Tennessee, such as the City, are included as governmental entities.  Tenn. Code. Ann. § 29-20-102(3)(A).

The GTLA removes immunity from governmental entities for "injury proximately caused by a negligent act or omission of any employee within the scope of his employment." § 29-20-205. However, the statute specifically exempts claims where the injury arises out of false arrest, false imprisonment, and civil rights. § 29-20-205(2). The legislature's creation of enumerated exceptions indicates those exceptions should be strictly limited. *Limbaugh v. Coffee Med. Ctr.*, 59 S.W.3d 73, 84 (Tenn. 2001) (rejecting a blanket exception to liability for negligence resulting from intentional torts not enumerated in the statute); *Fortenberry v. George*, No. E2000-02984-COA-R3-CV, 2002 WL 1446675, *6, 2002 Tenn.App. LEXIS 466, *21 (Tenn.Ct.App. July 3, 2002). Assault is not listed as an exception in the statute. § 29-20-205(2). Thus, governmental entities are not immune from negligence claims based on allegations of assault. *Fortenberry*, 2002 WL 1446675, at *7, 2002 Tenn.App. LEXIS 466, at *22.

The GTLA waives sovereign immunity for any injury proximately caused by a negligent act or omission of any employee within the scope of his employment. Tenn. Code Ann. § 29-20-205.

Plaintiff's claim for negligence must fail. Plaintiff in support of her summary judgment filed several excerpts from her deposition. Plaintiff does not point anywhere in the record to any evidence of any particular act of negligence unrelated to the intentional torts of the police officers, specifically malicious prosecution, false arrest, assault and battery.

An allegation of excessive force makes a claim for battery or assault, but does not make out a claim for negligence. *City of Mason v. Banks*, 581 S.W.2d 621, 626 (Tenn. 1979). The only tort the GTLA removed immunity for is the tort of negligence. Therefore, any meritorious claim must be a negligence claim.

In *Banks*, the Tennessee Supreme Court considered whether the city was required to indemnify a policemen liable for a judgment based on a false arrest obtained against the policeman in federal court. *Id*. at 623. The statute provided the city would indemnify the actions of its employees so long as the conduct was not willful. *Id*. As the court stated the primary factual issue . . . is whether [defendant] engaged in willful wrongdoing when he arrested respondent, or whether he was justified, although negligent. "A finding that [Defendant] did not have reasonable grounds to effect the arrest by the force employed does not mean that [Defendant] was negligent. . . . [Defendant] intended to hit [Plaintiff] . . . it was his conscious act." *Id*. at 626. "In this case the allegations couched in negligence go only to whether the police officers had a privilege and whether they exceeded the reasonable use of the privilege." *Id*. (*citing Baranowski v. City of Milwaukee*, 235 N.W.2d 279, 282 (Wisc. 1975)).

The Wisconsin case cited with approval by the Tennessee Supreme Court is a case squarely on point. In *Baranowski* the plaintiff claimed to be the victim of an illegal arrest, and filed a negligence suit against the city to take advantage of a Wisconsin statute similar to the GTLA. *Baranowski*, 235 N.W.2d at 687-89. The court stated

> although couched in the terms of negligence, the complaint alleges an intentional trespass and assault and battery. The plaintiff seeks damages resulting from an unlawful forcible entry and the intentional physical attack upon him. The actual entry into the building and the physical force used by the police against the person of the plaintiff were intentional acts. This we believe to be the gravamen of the plaintiff's complaint and labeling the acts as negligence does not make it otherwise.

*Id*. at 688. The Wisconsin court rejected arguments that a failure to appropriately determine the probable cause or a failure to appropriately determine a level of force were negligent acts, because those speak to privilege and not the actual underlying torts of intentional assault and battery. *Id*.

The rule as stated by the Tennessee Supreme Court and the Wisconsin Supreme Court appears to be the general rule. "The definition of negligence . . . includes only such conduct as creates liability for the reason that it involves a risk *and not a certainty* of invading the interest of another." Restatement (Second) of Torts § 282 Comment d (emphasis added). Several lower Tennessee Courts have considered this issue and concluded for a plaintiff to state a claim under the negligence section of the GTLA requires the Plaintiff to point to an independent negligent act of the municipal entity. *Baines v. Wilson County*, 86 S.W.3d 575, 580 (Tenn. Ct. App. 2002); *Pendleton v. Metro. Gov't of Nashville & Davidson County*, No. M2004-01910-COA-R3-CV, 2005 WL 2138240, at *4 (Tenn. Ct. App. Aug. 15, 2005).

Plaintiff cannot maintain a negligence action based on the intentional torts of the officers, and does not identify any negligence independent of those actions. Plaintiff does attempt to rely on negligence per se and alleged violations of the Tennessee criminal statutes (Court File No. 93 at 6). However, negligence per se is simply a means of showing negligence and is not a separate cause of action. Restatement (Second) of Torts § 285. For these reasons City's motion for summary judgment on this issue will be **GRANTED**.

### 2. Intentional Torts Against the Police Officers

Officers Nelms and Crawford are immune to any negligence claims. The GTLA grants immunity for governmental employees where the act removes sovereign immunity for the governmental entity. Tenn. Code Ann. § 29-20-310(b). The act removes sovereign immunity for the governmental entity for the negligence of employees within the scope of their employment. Tenn. Code Ann. § 29-20-205. Therefore negligence claims may only be made against the City and not the individual employees. However, the GTLA does not remove sovereign immunity for

intentional torts, and so officials may still be sued individually for their intentional torts under the common law.  *See Baines v. Wilson County*, 86 S.W.3d 575, 583 n.5 (Tenn. Ct. App. 2002).  State officers and employees are only liable for willful, malicious or criminal acts or omissions.  Tenn. Code Ann. § 9-8-307(h).

Plaintiff argues the factual proof presented by Plaintiff supporting her civil rights claims "proves the basis for the Defendants here to also be held to trial on the ancillary state claims as set out in the complaint and the amended complaint."  (Court File No. 93 at 6).

Plaintiff attempts to add a claim for negligent infliction of emotional distress in her response in opposition to summary judgment (Court File No. 93 at 6).  Plaintiff did not plead this claim in her complaint, and in any event expert medical evidence is required to make out a claim for negligent infliction of emotional distress.  *Camper v. Minor*, 915 S.W.2d 437, 446 (Tenn. 1996).  Plaintiff has not presented the Court with any such evidence.

As for Plaintiff's claim of intentional infliction of emotional distress, expert medical evidence is not required.  *Miller v. Willbanks*, 8 S.W.3d 607, 615 (Tenn. 1999).  The elements of intentional infliction of emotional distress in Tennessee are: "(1) the conduct complained of must be intentional or reckless; (2) the conduct must be so outrageous that it is not tolerated by civilized society; and (3) the conduct must result in serious mental injury to the plaintiff."  *Id*. at 612.

Plaintiff's claims for false arrest, excessive force, and malicious prosecution implicate conduct sufficiently outrageous to satisfy the first element of intentional infliction of emotional distress.  *Foster v. Trentham's, Inc.*, 458 F.Supp. 1382, 1384 (E.D. Tenn. 1978) (unwarranted criminal proceedings state a claim for outrageous conduct).  However, Plaintiff in her response in opposition to summary judgment merely alleges she suffered "emotional upheaval, migraine, as well

as physical injuries caused by the Defendant's actions." (Court File No. 93 at 6). Tennessee requires a serious or severe mental injury in order to make out a claim for intentional infliction of emotional distress. *Miller*, 8 S.W.3d at 615 n. 4 (Tenn. 1999).

> It is only where [the mental injury] is extreme that the liability arises. Complete emotional tranquility is seldom attainable in this world and some degree of transient and trivial emotional distress is a part of the price of living among people. The law intervenes only where the distress is so severe that no reasonable [person] could be expected to endure it.

*Id*. (citing Restatement (Second) of Torts § 46 comment j (1965)). The Tennessee Supreme Court speaks of mental injury and so Plaintiff's claimed physical injuries may be disregarded. There is no detail of the alleged emotional upheaval, and a mere reference to migraines of indefinite number and severity is insufficient to support a claim for a severe mental injury. Plaintiff has failed to raise a genuine issue of material fact on her claims for negligent infliction of emotional distress and intentional infliction of emotional distress.

Plaintiff's claims for assault and battery against Crawford is appropriately supported for the same reasons as Plaintiff's claims for false arrest and excessive force claims explained above. Similarly, Plaintiff fails to show a genuine issue of material fact in her assault and battery claim against Nelms. Therefore, the Court will **DENY** Crawford's motion for summary judgment on assault and battery. The Court will **GRANT** Nelms's motion for summary judgment on assault and battery.

Plaintiff's response in opposition only mentions trespass and abuse of process twice. The first mention is merely a listing of the counts in the complaint (Court File No. 93 at 2). The second does not show a genuine issue of material fact. Plaintiff merely states "[t]here is no question that the alleged statutes of assault, trespass with injury and abuse of process are statutes of the State of

Tennessee in full force and effect at the time that this violation took place." (*Id*. at 6). What follows is an argument for a negligence per se action. Plaintiff offers no particular argument or justification for the survival of either claim. Despite the similarity in concept, abuse of process and malicious prosecution are distinct torts with different elements. Therefore, in the absence of any argument or evidence in favor of trespass and abuse of process surviving past summary judgment the Court will **GRANT** Defendants' motions for summary judgment on these claims.

### 3. Malicious Prosecution

The elements of a malicious prosecution claim under Tennessee law are: (1) that a prior lawsuit or judicial proceeding was brought against the plaintiff without probable cause, (2) that the prior lawsuit or judicial proceeding was brought against the plaintiff with malice, and (3) that the prior lawsuit or judicial proceeding terminated in the plaintiff's favor. *Parrish v. Marquis*, 172 S.W.3d 526, 530 (Tenn. 2005).

Nelms and Crawford argue Plaintiff cannot support her claim for malicious prosecution because the criminal charges were brought pursuant to probable cause and Plaintiff cannot produce any evidence showing that malice existed in bringing the charges (Court File No. 76 at 22). The existence of probable cause in this case presents a jury question for the reasons discussed above in the section denying Nelms's and Crawford's motions for summary judgment on false arrest. As to malice the Plaintiff alleged Nelms and Crawford arrested her and charged her "to cover their own misconduct." (Complaint ¶ 69(b)).

Crawford also moves for summary judgment on this claim because "Crawford was not involved in instituting the criminal charge against the Plaintiff." (Court File No. 78 at 21-22). The affidavit of complaint was filled out by Nelms (Court File No. 77 Ex. 3). For purposes of malicious

prosecution criminal proceedings are "instituted" when an individual is "lawfully arrested on a criminal charge." Restatement (Second) of Torts § 654(2)(c). But "[i]f the arrest is not a valid one, an action for malicious prosecution will not lie unless some further step is taken." *Id*. comment e. Here, Plaintiff has produced no evidence of any action of Crawford subsequent to the allegedly illegal arrest, and therefore the Court will **GRANT** Crawford's motion for summary judgment.

As noted above, Plaintiff has shown sufficient evidence for her false arrest and excessive force claims to go forward, and if a jury were to find for Plaintiff on those claims a reasonable juror could infer charges were filed for an improper purpose. Nelms also swore out the affidavit, which the grand jury appears to have relied upon in its determination of whether probable cause existed or not (Court File No. 93, Ex. 4). Therefore, the Court will **DENY** Nelms's motion for summary judgment on this claim because a reasonable juror could conclude Nelms took additional steps after the alleged unconstitutional arrest.


IV.     **CONCLUSION**

For the foregoing reasons, the Court will **GRANT** City's motion for summary judgment (Court File No. 79). The Court will **GRANT IN PART** Nelms's and Crawford's motions for summary judgment (Court File Nos. 75, 77). Nelms's and Crawford's motions are granted with the following exceptions. The Court will **DENY** Crawford's motion for summary judgment on excessive force under 42 U.S.C. § 1983 and state law tort claim for assault and battery. The Court will **DENY** Nelms's and Crawford's motions for summary judgment on claims of false arrest. The Court will **DENY** Nelms's motion for summary judgment on Plaintiff's state law claim for malicious prosecution. These claims will proceed to trial on April 14, 2008.

An order shall enter.

/s/
**CURTIS L. COLLIER**
**CHIEF UNITED STATES DISTRICT JUDGE**